**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York                                    1:19-cv-10433

| | |
|---|---|
| Jennifer Legrier, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Walmart Inc., | |
| Defendant | |

       Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

       1.    Walmart Inc. ("defendant") manufactures, distributes, markets, labels and sells ice cream products purporting to contain flavor from their natural characterizing flavor, vanilla, specifically, Vanilla Bean Ice Cream, under their Great Value brand ("Products").

<u>Vanilla Bean Ice Cream</u>



I.      Vanilla is Perennial Favorite Ice Cream Flavor

2.      Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

3.      Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

4.      Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5 pounds to the gallon and containing less than 1.4 % egg yolk solids.[3]

5.      Vanilla is the consistent number one flavor for 28% of consumers, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

6.      The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[4]

7.      By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[5]

8.      The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge and sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[6]

A.  Philadelphia-style v. French Ice Cream

9.      In the development of ice cream, the two main types were Philadelphia-style and

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.
[3] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").
[4] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[5] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[6] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.

French ice cream, flavored of course, with vanilla.

10.    Philadelphia-style and French ice cream were introduced to the United States by two men who had served as ambassadors to France: Ben Franklin and Thomas Jefferson.

11.    While these two Founding Fathers could agree on the terms of the Declaration of Independence, they could not reach consensus on which type of vanilla ice cream was superior.

12.    According to legend, Ben Franklin prepared the first "crème froid" is "one of the earliest recorded ice cream recipes from the United States," introduced during the sweltering summer of the Constitutional Convention of 1787.[7]

13.    Due to the abundance of dairy farms in the Philadelphia area, the lack of hens to provide an egg yolk base and the need to quickly prepare batches of this refreshing treat for the delegates, Philadelphia-style ice cream was not cooked.[8]

14.    Future President Thomas Jefferson, on the other hand, was a partisan of the egg yolk base, describing this treat as "French ice cream."[9]

15.    The egg yolk solids, coupled with vanilla, distinguish a "French" vanilla ice cream from its "vanilla" counterpart by providing a: [10]

- smoother consistency and silkier mouthfeel than typical vanilla ice cream;

- caramelized, smoky and custard-like taste; and

---

[7] Julia Reed, Ice cream two ways: A tale of two continents, King Arthur Flour, Blog, Aug. 24, 2018; *but see* Jeff Keys, Ice Cream Mix-ins, N.p., Gibbs Smith (2009) at 14.
[8] Vanilla Ice Cream, Philadelphia-Style, The Perfect Scoop, Epicurious.com, Dec. 2011; Dr. Annie Marshall, Vanilla Bean Ice Cream Two Ways, and Ice Cream Basics, July 8, 2011, Everyday Annie Blog ("Varieties of ice cream generally fall into two main categories: Philadelphia-style or French-style.  Philadelphia style ice creams are quicker and simpler, with a heavy cream/milk mixture for the base.  French-style ice creams have a custard base, with cooked egg yolks to help achieve a creamy texture and rich flavor.").
[9] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013
[10] The descriptor "French" or "french" preceding "vanilla" does not modify the word "vanilla."

- deep-yellow color.[11]

16.   Today, ice cream with 1.4% or more egg yolk solids as part of its base is referred to as "french ice cream."[12]

17.   Philadelphia-style and French ice creams also differed in the form of vanilla they used to provide flavor.

18.   The French varieties used vanilla extract, the liquid created when the flavor molecules of a vanilla bean are extracted by alcohol.[13]

19.   The Philadelphia-style ice creams used the dark brown seeds contained inside the vanilla bean pod which had not been subject to extraction – referred to as "caviar," "specks" or "flecks."

Vanilla Extract                    Vanilla Beans

    

---

[11] Sheela Prakash, What's the Difference Between Vanilla and French Vanilla Ice Cream?, The Kitchn, June 7, 2017.
[12] 21 C.F.R. § 135.110(f)(1) ("The name of the food is 'ice cream'; except that when the egg yolk solids content of the food is in excess of that specified for ice cream by paragraph (a) of this section, the name of the food is 'frozen custard' or 'french ice cream' or 'french custard ice cream'.)
[13] 21 C.F.R. §§ 169.175 (Vanilla extract.) (at least thirty-five (35) percent ethyl alcohol).

20.    Vanilla beans are valued by consumers because they provide a more intense and pure flavor than vanilla extract *and* add visual appeal.[14]

21.    The majority of ice cream today is made in the Philadelphia-style, but the form of vanilla predominantly used is vanilla extract.

22.    Vanilla bean ice cream is expected to contain vanilla extract and vanilla beans as the only sources of flavoring.

II.    Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

23.    The tropical orchid commonly known as "vanilla" does not  develop its prized flavor on its own, but must be developed over several months following harvest.

24.    By law, vanilla refers to the "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[15]

25.    Shortly after the passage of the Pure Food and Drugs Act of 1906, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[16]

26.    This demand could not be met by the natural sources of vanilla, leading manufacturers to devise methods to imitate vanilla's flavor and appearance.

27.    Though the Pure Food and Drugs Act was enacted to "protect consumer health and

---

[14]    Lisa Weiss and Gale Gand, *Chocolate and Vanilla: A Baking Book*, United States: Potter/Ten Speed/Harmony/Rodale (2012) at 113-14; Louisa Clements, Pantry 101: Vanilla extract vs. vanilla beans, Chat Elaine, Nov. 30, 2015; David Lebovitz, The Perfect Scoop: Ice Creams, Sorbets, Granitas, and Sweet Accompaniments. United States: Potter/TenSpeed/Harmony (2011) at 26.
[15]    21 C.F.R. §169.3(c)
[16]    E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein,  "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[17]

28.　Daily headlines tell a story of a "resurgent" global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[18]

29.　While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

30.　Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[19]

A.　Food Fraud as Applied to Vanilla

31.　The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[20]

| Type of Food Fraud | Application to Vanilla |
| --- | --- |
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |

---

[17] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[18] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?, Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

[19] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[20] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

➤ Appearance of *more* and/or higher quality of the valued ingredient

- Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla beans, when the ground beans have been exhausted of flavor, and any vanilla flavor may not even be from real vanilla
- Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla[21]
- Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter

➤ Substitution and replacement of a high quality ingredient with alternate ingredient of lower quality

- Tonka beans, which are banned from entry to the United States, instead of vanilla beans
- Coumarin, a toxic phytochemical found in Tonka beans, to increase the vanilla flavor perception

➤ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

- Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar, to imitate taste of real vanilla

➤ Compounding, Diluting, Extending

- "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste."[22]
- Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably

---

[21] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[22] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.

producing the sensation of vanilla"[23]

- "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark

➢ Addition of fillers to give the impression there is more of the product than there actually is

- Alleged injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans; *see International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005. Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County.

- Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list

➢ Ingredient List Deception[24]

  o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics

  o "vanilla flavoring" – "-ing" as suffix referring to something *like* that which is described

B.  Addition of Vanillin to Vanilla

32.    When German chemists synthesized vanillin, the main flavoring component in vanilla, from sources other than the vanilla beans in the mid-1800s, it became much more difficult to distinguish between a substance that was derived from vanilla beans instead of the synthetic substances that were the actual raw material for vanillin.

33.    Over one hundred years ago, regulatory agencies cautioned consumers that flavor

---

[23] Berenstein, 423.
[24] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label."[25]

34.  Food companies no longer had to pay high prices for the labor-intensive vanilla beans to provide a semblance of vanilla flavor, since a literal drop of vanillin but often, no real vanilla, could deceive all but the most discerning palates.

35.  According to Skip Rosskam, a professor of vanilla at Penn State University and the previous president of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[26]

36.  The discovery of synthetic vanillin was the equivalent of steroids for vanilla flavor.

37.  Due to vanillin's ability to "boost," "fortify" or "spike" a miniscule amount of real vanilla, its presence and relationship to vanilla is required to be disclosed.

38.  Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations.

39.  This means that if a product is represented as being characterized by vanilla yet also contains non-vanilla vanillin, the label and packaging must declare the presence of vanillin and identify it as an artificial flavor.

40.  This is shown through the required disclosures for the three vanilla-vanillin combinations included in the vanilla standards – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[27]

41.  Following the name of the ingredient, i.e., vanilla-vanillin extract, the label is

---

[25] Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168.
[26] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.
[27] 21 C.F.R. § 169.180, § 169.181, § 169.182.

required to state "contains vanillin, an artificial flavor (or flavoring)."[28]

42.    The required disclosure is applicable even if the vanillin is made from natural materials and through a natural process.

43.    This prevents consumers from being misled by products which may taste similar to real vanilla but are actually made from tree bark, clove oil and recycled paper.

44.    Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

45.    In ice cream vanillin from non-vanilla sources it not a natural flavor even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

46.    These natural processes may include fermentation but when high heat and high pressure is used, the FDA considers this to be a synthetic method of obtaining a flavor.

47.    This "natural" process of high heat and high pressure is used to obtain vanillin from the non-vanilla material of eugenol, the main component of clove oil.

48.    Vanillin derived from eugenol through a high heat and high pressure process is not considered "natural vanillin" which makes its addition to the "WONF" part of "Vanilla WONF" misleading.

49.    Further, it is misleading and unlawful to use any type of vanillin with vanilla and not explicitly disclose that vanillin is considered an artificial flavor because this flavor was created to "boost" a real natural flavor, vanilla.

---

[28] 21 C.F.R. § 169.180(b) ("The specified name of the food is "Vanilla-vanillin extract _-fold" or "_-fold vanilla-vanillin extract", followed immediately by the statement "contains vanillin, an artificial flavor (or flavoring)."); *see also* 21 C.F.R. § 169.181(b), § 169.182(b).

III.   Ice Cream Flavor Labeling is Distinct from Non-Ice Cream Flavor Labeling

50.   The ice cream flavor regulations are specific to this food and "established long before the development of the general flavor regulations published under 21 CFR 101 .22."[29]

51.   The result is that "the labeling requirements for the declaration of flavors in the name of ice cream are specifically provided for by the standard [for ice cream] and is separate and apart from the general flavor regulations."[30] *Compare* 21 C.F.R. § 135.110(f)(2)-(5) *with* 21 C.F.R. § 101.22.

52.   Under 21 C.F.R. § 101.22(a)(3), "natural flavor" is defined generally as "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.

53.   "Artificial flavor" in contrast is any substance whose function is to impart flavor that is not derived from a natural source.  *See* 21 C.F.R. § 101.22(a)(1).

54.   In the context of ice cream, "natural flavor" has a different meaning and usage and refers *only* to the natural *characterizing* flavor:

> A product identified as "Vanilla Ice Cream" is subject to the category Ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans.

55.    "Artificial flavor" in ice cream means (1) any flavor not derived from the characterizing flavor, even if obtained from natural sources and made through natural processes.

A.  Early Ice Cream Flavoring Debate is "Stirring"

56.   The unique "ice cream only" natural and artificial flavor distinction is shown through one of the Congressional Hearings in the 1930s.

---

[29] Exhibit "A," FDA to James Daugherty, Use of "flavor blend (other natural flavors) in category 1 ice cream," Apr. 1, 1979.
[30] *Id*.

57.    The subject was how to label vanillin, when it was obtained not from vanilla beans but from cloves oil, a natural source material.

58.    Why, the lobbyists, asked Congress, could they not label their products as "vanilla ice cream" if it contained vanillin from sources other than vanilla beans?

59.    Congressmen E.A. Kenny of New Jersey and Virgil Chapman of Kentucky inquired of the ice cream lobby's representative, Mr. Schmidt:

Mr. Kenney:   Do you not think, though, Mr. Schmidt, that if you label it vanilla ice cream, it ought to be vanilla; and if it is made with vanillin extracted from oil of cloves, you ought to label it manufactured with such vanillin?

Mr. Schmidt:   Well, we, of course, do not think so. That is why we are here making our protest. We think, after all, the consuming public is accustomed to accepting as vanilla artificial vanillas.

Mr. Kenney:   *We agree that Barnum educated us along that line a long time ago.* (emphasis added)

……………

Mr. Chapman: I do think that if it is chocolate it ought to be labeled "chocolate"; and if it is flavored with vanillin made from oil of cloves, it ought to be labeled to show that it is flavored with vanillin made from oil of cloves; and if it is flavored with vanilla, it ought to be labeled "vanilla"; and if it is " flavored with lemon, it ought to be labeled lemon "; and if it is cherry, it ought to be labeled "cherry."

60.    Later in the hearing, Mr. Chapman and another industry representative engaged over the proper declaration of flavor for ice cream:

Mr. Chapman:   Do you make raspberry?

Mr. Hibben.   Yes.

Mr. Chapman.   And you put that on the label?

Mr. Hibben   We say "raspberry ice cream."

Mr. Chapman   And if it is peach, you put that on the label?

Mr. Hibben.   It Is peach ice cream; yes.

| Mr. Chapman. | And If you call it vanilla, what do you put on? |
| Mr. Hibben | We put "vanilla ice cream" on our labels. That Is what we want to continue to do. We want to put vanilla on those labels. |
| Mr. Chapman | But you say you put in It oil of cloves instead of vanilla. |
| Mr. Hibben | We do not use cloves. We use vanillin derived from the oil of cloves. |
| Mr. Chapman. | If you put out strawberry ice-cream, you would not want to use raspberry to make it, would you? |
| Mr. Hibben | No; but we use vanillin, which is an ingredient of the vanilla bean and, its true to name. |
| Mr. Chapman | Is it an extract from the vanilla bean? |
| Mr. Hibben | It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other. |
| Mr. Chapman: | I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial. I would like to know what I am getting. |

61.    The above highlighted portions reveal that even before ice cream standards were established, the central question for ice cream flavoring was whether the flavor source was entirely derived only from the characterizing flavor.

62.    Representative Chapman's comments about the use of raspberries to flavor strawberry ice cream and vanillin from clove oil to flavor vanilla ice cream succinctly summed up what would become the three-category flavor labeling system for ice cream.

63.    One of the reasons for these different requirements is because ice cream is a high quality and expensive product made mainly from milk and cream.

IV.    Ice Cream Flavor Labeling

64.    To prevent deception of consumers, the flavor designation for ice cream is divided

into three categories based on the:

   (i)     use of natural and various combinations of natural and artificial flavors that characterize this food;

   (ii)    source(s) of the characterizing flavor;

   (iii)    flavor which predominates;

   (iv)    amount of each flavor component in the product; and

   (v)     percent of the total flavor component represented by a flavor component.[31]

65.     Daphna Havkin-Frenkel, editor of the *Handbook of Vanilla Science and Technology*, and a leading scholar and researcher on vanilla, summarized these issues in the context of ice cream flavored by vanilla:[32]

There are three categories of vanilla ice cream, as defined by the FDA Standard of Identity. Vanilla ice cream Category I contains only vanilla extract. Vanilla ice cream Category II contains vanilla made up of 1 oz of synthetic vanillin per 1 gallon of 1-fold vanilla extract. Vanilla ice cream Category III contains synthetic ingredients.

66.     This reading of the flavor requirements for ice cream is supported by (1) legislative history such as Congressional Hearings, (2) dozens of binding, unrevoked and unamended regulatory documents such as letters, memoranda and (3) industry compliance with these requirements for over thirty years.

67.     Category 1 is contained at 21 C.F.R. §135.110(f)(2)(i), which states that where an ice cream "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream.'"

68.     In a generic form, Category 1 products are expressed as:

---

[31] 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).
[32] Daphna Havkin-Frenkel and Faith C. Belanger, eds., *Handbook of Vanilla Science and Technology*, Wiley, 2018 (221).

["characterizing flavor"] + ["ice cream"] → "Vanilla Ice Cream" or "Strawberry Ice Cream." ("Category 1").

69.   Category 2 products are those which have a natural characterizing flavor (i.e., vanilla) and an artificial flavor simulating it. *See* 21 C.F.R. §135.110(f)(2)(ii).

70.   If the natural flavor predominates, the product description is expressed as:

["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream." ("Category 2").

71.   Category 3 ice creams may contain a natural characterizing flavor and an artificial flavor simulating it or only artificial flavor. *See* 21 C.F.R. §135.110(f)(2)(iii).

72.   If the artificial flavor predominates, or if only artificial flavor is used, the description is:

["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream." ("Category 3").

V.   The Products are Not a "Category 1" Ice Cream Because they Contain Non-Vanilla Flavoring

73.   The front label statement of "Vanilla Bean Ice Cream" without qualification and the vignette of the vanilla beans are understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) no other flavors in the product simulate vanilla, (4) no other flavors in the product simulate, resemble, reinforce, or enhance vanilla and (5) vanilla is the exclusive source of flavor.

74.   The ingredient list reveals the Products contain non-vanilla flavors because "Natural Flavors" is declared.

**INGREDIENTS:** MILK, CREAM, BUTTERMILK, SUGAR, WHEY, CORN SYRUP, SKIM MILK, CONTAINS 1% OR LESS OF NATURAL FLAVORS (WITH VANILLA EXTRACT), VANILLA BEAN SPECS, MONO AND DIGLYCERIDES, CAROB BEAN GUM, GUAR GUM, CARRAGEENAN, CELLULOSE GEL, CELLULOSE GUM.

**INGREDIENTS:** MILK, CREAM, BUTTERMILK, SUGAR, WHEY, CORN SYRUP, SKIM MILK, CONTAINS 1% OR LESS OF NATURAL FLAVORS (WITH VANILLA EXTRACT), VANILLA BEAN SPECS, MONO AND DIGLYCERIDES, CAROB BEAN GUM, GUAR GUM, CARRAGEENAN, CELLULOSE GEL, CELLULOSE GUM.

75.     Where a Category 1 vanilla ice cream product purports to have a characterizing flavor of vanilla or vanilla bean, without any qualification, but the ingredient list identifies "natural flavor" as the exclusive flavoring ingredient or as one of the flavoring ingredients, it means (1) the flavoring in the food is not exclusively vanilla and (2) the product contains non-vanilla flavors obtained from natural sources other than vanilla beans and made through natural processes.[33]

A.     Standardized Food of Ice Cream is Required to Declare Ingredients by their Common or Usual Names Set by Standards of Identity

76.     The common or usual names of the exclusively vanilla ingredients include Vanilla Extract, Concentrated Vanilla Extract, Vanilla Flavoring and Concentrated Vanilla Flavoring, specified in the regulations for vanilla ingredients.  *See* 21 C.F.R. §§ 169.175 to 169.178.

77.     These exclusively vanilla ingredients – vanilla flavoring, vanilla extract, etc. – differ

---

[33] These natural processes may include fermentation but when high heat and high pressure is used, the FDA considers this to be a synthetic method of obtaining a flavor.  This "natural" process of high heat and high pressure is used to obtain vanillin from the non-vanilla material of eugenol, the main component of clove oil. Vanillin derived from eugenol through a high heat and high pressure process is not considered "natural vanillin" which makes its addition to the "WONF" part of "Vanilla WONF" misleading. Further, it is misleading and unlawful to use any type of vanillin with vanilla and not explicitly disclose that vanillin is considered an artificial flavor because this flavor was created to "boost" a real natural flavor, vanilla.

only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount.[34]

78.    Because ice cream is a standardized food and the vanilla ingredients are subject to their own standards of identity, the designation of these vanilla ingredients is controlled by 21 U.S.C. §343(g) – they are required to be specifically declared:[35]

> A food shall be deemed to be misbranded –
>
> (g) Representation as to definition and standard of identity
>
> If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

79.    It is also a general requirement that all ingredients be listed by their common or usual name. *See* 21 C.F.R. § 101.4(a)(1).

80.    The presence of vanilla extract as part of – but not the entirety of – the Natural Flavor ingredient is hinted at through statement "With Vanilla Extract."

81.    This text confirms the within analysis which argues the Product is not flavored exclusively by vanilla.

B.    Vanilla WONF (in Sheep's Clothing)

82.    The "Natural Flavors" used in the Product is an ingredient known as "Vanilla With Other Natural Flavors" or "Vanilla WONF."

83.    One trade journal described how industry is reacting to this global vanilla shortage by "innovate[ing] natural vanilla solutions…to protect our existing customers."[36]

---

[34] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.); also concentrated versions of each of these.
[35] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.
[36] Amanda Del Buouno, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

84.    The flavor industry's "customers" do not include the impoverished vanilla farmers who are at their mercy and consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

85.    According to Suzanne Johnson, vice president or research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price."

86.    According to industry participants like the head of "taste solutions" at Irish conglomerate Kerry, "The challenge is to find a vanilla flavor that matches the taste of pure vanilla natural extracts."[37]

87.    According to this executive, industry needed to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

88.    "This solution can provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."

89.    However, compounded flavors typically exist in a "black box" and "consist of as many as 100 or more flavor ingredients," blended together in a special ratio to complement and enhance the vanilla component.[38]

90.    Another analyst described the task of the flavor industry to develop vanilla compound flavors "That Seem[s] to be Authentic or at Least Derived from a Natural Source."[39]

91.    This Natural Flavor or Vanilla WONF used in the Product is a standard compounded flavor, which contains potentiators and enhancers, like maltol.

---

[37] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[38] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018.
[39] Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611.

92.    Additionally, Vanilla WONF ingredients used in vanilla ice cream have been determined, based on analytic testing, to contain added vanillin, to "boost" the miniscule amount of vanilla from actual vanilla beans.

93.    The addition of vanillin to vanilla is inconsistent with a Category 1 product and without disclosure of added vanillin, the consumers will believe the product has more vanilla than it actually does.

C.    No Justification for Category 1 with Vanilla WONF

94.    The "Natural Flavor" does not refer to "Vanilla Extract."

95.    Companies are permitted to list "Natural Flavor" on an ingredient list because in many instances, the flavor package they receive from their supplier will be a mix of multiple flavors, without any standard way to declare such a blend.

96.    Further, the declaration of "natural flavor" protects disclosure of valuable trade secrets since identification of the flavor components would then be known to competitors.

97.    Companies like defendant whose labeling is contrary to law and misleading consumers rely on a battery of excuses, illogical reasoning and a willful failure to read the relevant regulatory texts.

98.    The first explanation of companies which declare "natural flavor" in a category 1 vanilla ice cream product involves borrowing from the general flavoring regulations and asserting that vanilla extract "may be declared as ["spice",] 'natural flavor.'"  *See* 21 C.F.R. § 101.22(h)(1).

99.    The application of general flavoring regulations to vanilla is contrary to law, illogical and misleading to consumers.

100.    The second explanation claim that the "Natural Flavor" consists of almost all vanilla extract or vanilla flavoring and therefore the product is truthfully labeled.

101.   Such an argument disregards the long-established three-category flavor labeling regime for ice cream.

102.   The third explanation invokes reliance on a company's flavor supplier who has told them the product contains "100% natural vanilla flavorings."

103.   However, the suffix "-ing" is a giveaway that the flavor is *like* vanilla, in the same way the suffix "-ey" applied to chocolate is another way of saying, "this product tastes like chocolate, but is not chocolate."

VI.   Flavor Companies Mislead Consumers by Failing to Correct Manufacturers' Non-Compliance with Requirements They Were Involved in Establishing

104.   Attempts at opening this "black box" of the flavor industry are met with words like "proprietary," "exclusive" and "trade secret."

105.   The flavor houses are partially responsible for the consumer deception because even though they do not manufacture the Product, they supply its most valuable and important component – the flavoring.

106.   The flavor companies are also in the best position to correct any deceptive or incorrect label statements with respect to flavor.

107.   This is not a requirement imposed on any flavor company beyond a small effort at ensuring the flavors they sell are not used for deceptive labeling purposes.

108.   Such an argument is incredulous because there is nothing proprietary about vanilla extract which has been prepared the same way for almost one hundred years, even before a standard of identity was established.

109.   Eventually, a flavor company will produce a single page document which says something like "Nat Vanilla Extract WONF" followed by a string of letters and numbers.

110.   The manufacturers are agreeable to following the misleading guidance of their flavor

suppliers who are complicit in the mislabeling of the Products and ensuing consumer deception.

VII.    Misleading Use and/or Description of Vanilla Beans

111.    The Products are misleading with respect to the vanilla bean specs listed on the ingredient list.

112.    After all of the flavor has been extracted from vanilla beans, the exhausted, or spent beans achieve a secondary usage.

113.    The first (re-)use of the spent vanilla beans involves a drying, chopping and sining process and then are added to a product "strictly in a cosmetic manner, as they are flavorless."[40]

114.    The second usage involves infusing the exhausted beans with synthetic vanillin or other flavoring substances prior to being incorporated into food.

115.    This second method is more misleading than the first because the spent beans now have flavor, but unbeknownst to consumers, it is not the flavor which is present in a vanilla bean that has not been exhausted.

116.    The presence of "vanilla bean specs" on the Product's ingredient list is deceptive and misleading because (i) these specs are devoid of any flavor and (ii) the ingredient name fails to indicate this by accurately describing it as "spent (or exhausted) vanilla bean specs."

117.    Consumers will see vanilla beans in the product images, descriptive text and ingredient list and reasonably expect the Product contains a greater amount of vanilla and an additional type of vanilla when it does not.

118.    It is plausible and likely that the vanilla bean specs in the Products are exhausted or spent for several reasons.

---

[40] Chat Nielsen, Jr., The Story of Vanilla, p. 15.

119.   First, in a mass produced, private label product, the inclusion of vanilla bean specs would result in inconsistent flavoring from batch to batch.

120.   Second, the use of vanilla bean specs not devoid of flavor requires unique equipment and processes.

121.   Currently, there are only a handful of companies, such as Graeters of Ohio, which use actual, non-exhausted vanilla beans and vanilla bean specs in their ice cream products.

122.   None of these companies manufacture for private label products such as those here.

123.   Third, the global scarcity of vanilla beans means that almost all vanilla beans are used for extraction purposes.

124.   The liquid extract form has more uses than unexhausted vanilla beans, and is easier to sell.

125.   Fourth, numerous industry reports have taken notice of the proliferation of vanilla bean seeds on the market.

126.   Cook's Vanilla, an established vanilla supplier, has seen "an inordinate increase in demand for seeds, even while demand for pure vanilla extract has dropped,"

127.   The last two  years, companies have requested:

thousands of pounds of vanilla bean seeds accompanying much smaller orders for blended (Category II) vanillas made from both artificial and pure extract.

The mismatch between demand for vanilla seeds and vanilla extract makes it impossible to supply enough seeds. Since the seeds are a small by-product of vanilla extract, and we cannot obtain them unless we buy (extremely expensive) whole vanilla bean pods and make (extremely expensive) pure vanilla extract from them.

Even the cheapest, lowest-grade vanilla bean pods cost more that $100 per pound. So it unequivocally makes no sense to purchase vanilla bean pods for the sole purpose of getting their seeds.

Which means that some of the seeds you see are not vanilla bean seeds at all. Just as with pure vanilla extract, we suspect significant adulteration of exhausted

vanilla bean seeds in the industry.[41]

128.   Aust & Hachman, a vanilla trading company, recently noted that "[T]he demand for exhausted or spent vanilla, (vanilla waste after extraction), and vanilla seeds sifted from this material has exploded over the last 12 months" because the amount of actual vanilla has been at low levels, in part due to climactic conditions.[42]

VIII.   Vanilla Ice Cream Products are Misleading Because They are Labeled and Named Similar to Other Products

129.   Competitor brands to defendant's Products are labeled as or containing vanilla ice cream, and are not misleading because they only contain vanilla.

A.   Vanilla Ice Cream Product of Competitor and Defendant

130.   The following is an example of a Vanilla Ice Cream Product of defendant and a competitor product.

| Competitor Product | Product |
|---|---|
| Madagascar Vanilla Bean Ice Cream | Vanilla Bean Ice Cream |





---

[41] Cook's Blog, Vanilla Bean Seeds: A Troubling New Trend, June 13, 2019.
[42] Aust & Hachman Canada, May 2019 Update.

INGREDIENTS: CREAM, MILK, CANE SUGAR, SKIM MILK, EGGS, VANILLA BEAN, VANILLA EXTRACT, CAROB BEAN GUM, GUAR GUM.

**INGREDIENTS:** CREAM, MILK, CANE SUGAR, SKIM MILK, EGGS, VANILLA BEAN, VANILLA EXTRACT, CAROB BEAN GUM, GUAR GUM.

INGREDIENTS: MILK, CREAM, BUTTERMILK, SUGAR, WHEY, CORN SYRUP, SKIM MILK, CONTAINS 1% OR LESS OF NATURAL FLAVORS (WITH VANILLA EXTRACT), VANILLA BEAN SPECS, MONO AND DIGLYCERIDES, CAROB BEAN GUM, GUAR GUM, CARRAGEENAN, CELLULOSE GEL, CELLULOSE GUM.

**INGREDIENTS:** MILK, CREAM, BUTTERMILK, SUGAR, WHEY, CORN SYRUP, SKIM MILK, CONTAINS 1% OR LESS OF NATURAL FLAVORS (WITH VANILLA EXTRACT), VANILLA BEAN SPECS, MONO AND DIGLYCERIDES, CAROB BEAN GUM, GUAR GUM, CARRAGEENAN, CELLULOSE GEL, CELLULOSE GUM.

131.   The competitor product lists "Vanilla Bean" and "Vanilla Extract" on its ingredient list.

132.   The competitor product does not need to specify that the vanilla extract is a *component* of the natural flavor, or the compounded ingredient used for flavoring.

133.   The competitor product's listing of vanilla bean is truthful and non-misleading because the manufacturer has transparent business practices and has publicly disclosed its methods for including non-exhausted vanilla beans.

B.   Misleading to Have Identical or Similar Product Names Where Significant Differences in Product Quality or Composition

134.   Product names for ice cream are established through application of the relevant regulations.

135.   Products are required to be identified and labeled in a way consistent with other products of similar composition.

136.   This framework assures consumers will not be misled by the quality and components of similarly labeled products where one product contains a greater amount, type and/or proportion

of a characterizing and valuable ingredient.[43]

137.  Where two products are identified by the same descriptive terms and noun such as "Vanilla (Bean) Ice Cream" and where the front label has no other modifications of these terms, consumers will be deceived into purchasing the lower quality product under the false impression that it contains the equivalent amount of said ingredients or components.

138.  Defendant's Product is misleading because it is represented as identical to another product which contains higher quality ingredients, which causes consumers to be misled and purchase the former expecting the two products to be identical in quality and fill.

IX. Conclusion

139.  The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

140.  The Products are misleading because they do not contain the amount, type and percentage of vanilla as a component of the flavoring in the product which is required and consistent with consumer expectations.

141.  The representations of "vanilla (bean)" describing the ice cream products are unqualified, and the labels and packaging do not disclose the addition of non-vanilla flavors as part of the Products.

142.  Had plaintiff and class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

---

[43] *See* 21 C.F.R. § 135.110(f) and 21 C.F.R. § 102.5(a) ("General principles.") ("General principles.") ("The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.").

143.   The Products contain other representations which are misleading and deceptive.

144.   As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $6.59 per 9.12 OZ, calculated on an average per ounce basis across the Products, excluding tax – compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

145.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

146.   Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

147.   Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

148.   Plaintiff is a citizen of New York.

149.   Defendant Walmart Inc. is a Delaware corporation with a principal place of business in Bentonville, Benton County, Arkansas.

150.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

151.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

152.   A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

153.   Plaintiff Jennifer Legrier is a citizen of New York County, New York.

154.   Defendant is a Delaware corporation with a principal place of business in Bentonville, Benton County, Arkansas.

155.   During the class period, plaintiff purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, for no less than the price indicated, *supra*, excluding tax, in her state or an immediately adjacent state.

156.   Plaintiff would consider purchasing the Product again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

157.   The classes will consist of all consumers in all 50 states with sub-classes for the individual states and nationwide classes.

158.   Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

159.   The claims and the basis for relief of plaintiff are typical to other members because all were subjected to the same representations.

160.   Plaintiff is an adequate representative because her interests do not conflict with other members.

161.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

162.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

163.   The counsel for plaintiff is competent and experienced in complex class action

litigation and intends to adequately and fairly protect class members' interests.

164.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>and Consumer Protection Statutes of Other States and Territories</u>

165.   Plaintiff asserts causes of action under the consumer protection statutes of New York, General Business Law ("GBL") §§ 349 & 350.

166.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

167.   Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

168.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredient and contains more of the characterizing ingredient than they actually do, (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients (3) it does not conspicuously disclose the presence of artificial flavors on one of the Products identified here.

169.   Plaintiff and class members relied on the representations and omissions, paying more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

170.   Plaintiff incorporates by reference all preceding paragraphs.

171.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount and proportion than it was and affirmatively representing the Products was flavored only by this ingredient or component.

172.  Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

173.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

174.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

175.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

176.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq.</em></u>

177.  Plaintiff incorporates by reference all preceding paragraphs.

178.  Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

179.  The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

180.  Defendant's front labels informed and warranted to plaintiff the Products contained only the characterizing ingredients to impart flavor, and that they were present in amounts sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not "natural flavors" or "other natural flavors."

181.   Defendant had a duty to disclose and/or provide a non-deceptive description of the Products flavoring on the front labels and knew or should have known same were false or misleading.

182.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

183.   Plaintiff provided or will provide notice to defendant and/or its agents, representatives, retailers and their employees.

184.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

185.   Plaintiff and class members relied on defendant's claims, paying more than they would have.

Fraud

186.   Plaintiff incorporates by references all preceding paragraphs.

187.   Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) or flavor(s), and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of same.

188.   The Products were not flavored exclusively from the characterizing ingredient but from flavor compounds blended together and labeled as "natural flavor."

189.   Defendant's fraudulent intent is evinced by its failure to accurately indicate the Products contained flavor from non-vanilla sources on the front label, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and contain enough of the characterizing food ingredients to flavor the Products.

190.  Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of the characterizing ingredients for the above-described reasons.

191.  Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

192.  Plaintiff incorporates by references all preceding paragraphs.

193.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE,** Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   November 8, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:19-cv-10433
United States District Court
Southern District of New York

Jennifer Legrier, individually and on behalf of all others similarly situated

                              Plaintiff,


        - against -


Walmart Inc.
                              Defendant


## Class Action Complaint


```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
  Great Neck, NY 11021
  Tel: (516) 303-0552
  Fax: (516) 234-7800
```


Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 8, 2019

                                        /s/ Spencer Sheehan
                                        Spencer Sheehan